UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____ )
                                         )
                                         )
UNITED STATES OF AMERICA                 )
                                         )
v.                                       )        No. 22-CR-10141
                                         )
SEAN O'DONOVAN,                          )
                Defendant                )
                                         )
_____ )

## **RENEWED MOTION TO DISMISS COUNTS 1 AND 2**

Now comes the defendant Sean O'Donovan, by and through undersigned counsel, and, pursuant to Fed. R. Crim. P. 12, hereby renews his Motion to Dismiss Counts 1 and 2 of the Indictment in the above-captioned matter, alleging honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346.[1]  As grounds and reasons therefor, Mr. O'Donovan states that two binding opinions issued since the filing of his initial Motion to Dismiss reinforce his argument that the Indictment fails to allege the "core" bribery required to support a conviction for honest services fraud.  *See generally United States v. Abdelaziz*, No. 22-1129, 2023 WL 3335870 (1st Cir. May 10, 2023); *Percoco v. United States*, No. 21-1158, 2023 WL 3356527 (U.S. May 11, 2023).

The government Opposition to Mr. O'Donovan's Motion to Dismiss was predicated upon a legal premise that the First Circuit squarely rejected in *Abdelaziz*.  In the title of its leading

---

[1] The Indictment also charges Mr. O'Donovan with federal programs bribery in violation of 18 U.S.C. § 666, but, with respect to that count, the defense rests on the dismissal argument included in its initial Motion.  *See* Dkt. 19 at 14-20.

1

argument, the government asserted, "All Bribery and Kickback Schemes Survive *Skilling*."  Dkt. 23 at 6.  Relatedly, it faulted the defense for "seiz[ing] on the *Skilling* Court's use of the word 'core' . . . ."  *Id.* at 7.[2]  In support of this argument, the government relied on a district court decision in the Varsity Blues college admissions cases, *United States v. Sidoo*, 468 F. Supp. 3d 428, 444 (D. Mass. 2020).

The premise of the government's argument, that *Skilling*'s narrowing of honest services fraud to the "core" of the pre-*McNally* doctrine included any conduct that could be characterized as bribery or kickbacks, regardless of whether or not it conformed to the pre-*McNally* case law was conclusively refuted by the First Circuit in its recent *Abdelaziz* opinion, which abrogated *Sidoo* and interpreted *Skilling*'s narrowing construction just as Mr. O'Donovan posited in his opening Motion.  *Skilling* did not, as the government suggested, merely limit the honest services statute to bribery and kickbacks, but rather prohibited reliance on "non-traditionally recognized form[s] of bribery."  *Abdelaziz*, 2023 WL 3335870, at *14.  Instead, the First Circuit made crystal clear that the only allegations of bribery and kickbacks that were properly criminalized by §1346 were a subset that were within the "core" of pre-*McNally* bribery law, a limitation that the Court in *Abdelaziz* repeatedly emphasized in its opinion.  *See id.* at *16-19.  The allegations set forth in the Indictment here are well outside this core.

Prior to the Supreme Court's 1987 *McNally* decision, courts of appeals "interpreted the term 'scheme or artifice to defraud'" in the mail and wire fraud statutes "to include deprivations not only of money or property, but also of intangible rights."  *Id.* at *15 (quoting *Skilling*, 561

---

[2] According to the government, that "term was used only to distinguish the bribery-and-kickback heartland of honest services cases from the more amorphous self-dealing category of conduct."  *Id.*

U.S. at 400).  One such intangible right was that of the public to the "honest services" of government officials.  *McNally* "stopped [the honest services theory] in its tracks" by construing the mail fraud statute "as limited in scope to the protection of property rights."  *Id.* (quoting *Skilling*, 561 U.S. at 401-02).  In doing so, the Court observed that a more expansive reading would leave the "outer boundaries" of mail and wire fraud "ambiguous and involve[] the Federal Government in setting standards of disclosure and good government for local and state officials."  *Id.* (quoting *Skilling*, 561 U.S. at 402).  Congress responded the next year, by enacting § 1346, which provides "For the purposes of [the mail and wire fraud statutes], the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.  The legislative "fix" failed to cure the ambiguity of the statute which facially failed to fulfill the notice requirement of federal criminal statutes.

Decades later in *Skilling*, the Supreme Court was confronted with a vagueness challenge to the honest services statute.  "Recognizing the constitutional due process concerns, including fair notice and vagueness, raised by the statute, the Court chose to narrow the statute, rather than invalidate it, to 'preserve what Congress certainly intended the statute to cover,' that is, what the Court called the 'core' of the pre-*McNally* honest services doctrine."  *Abdelaziz*, 2023 WL 3335870, at *16 (quoting *Skilling*, 561 U.S. at 404).  *Skilling* ultimately "h[e]ld that § 1346 criminalizes *only* the bribe-and-kickback ***core*** of the pre-*McNally* case law."  *Id.* (quoting *Skilling*, 561 U.S. at 408-09) (second emphasis added).

Mr. O'Donovan, like the defendants in *Abdelaziz*, argued that his alleged conduct does not constitute "core" bribery under *Skilling*.  For one thing, the Indictment does not allege "any benefit whatsoever flowing from Mr. O'Donovan to the Chief, the only party alleged to have

3

owed a duty of honest services," which in itself "places the present case decidedly outside the

'core' of the pre-*McNally* honest services doctrine." Dkt. 19 at 9-11 (citing cases). Second,

there is "no allegation that the [Chief] participated in" personally making or orchestrating the

alleged bribery arrangements that would include a payment on his behalf to a third party, here his

close relative. *Id.* at 11. Finally, "the entire premise of this prosecution was manufactured by a

government cooperator," reinforcing the conclusion that the case does not involve core honest

services fraud. Dkt. 28 at 7-8. A review of case law reveals that a bribery prosecution

predicated on manufactured facts, *i.e.* lacking a real public official who was receiving a bribe or

giving a kickback to betray his obligations, is the antithesis of "core" pre-*McNally* honest

services law. Similarly, a review of case law cited by the government, *see generally* Dkt. 23,

fails to identify a pre-*McNally* precedent comparable to the allegations in this case.

     In essence, *Abdelaziz* sharpened the Court's focus on "core" bribery under *Skilling*. *The*

*opinion uses that term more than a dozen times.* Here, for reasons previously outlined in detail,

the allegations against Mr. O'Donovan fall well outside the core of the pre-*McNally* honest

services doctrine. There is no precedent supporting application of that doctrine "to a payment to

a third-party with no duties whatsoever to the public, absent an allegation, not present herein,

that either a public official was sharing in the items of value provided to a third-party and/or that

the official had directed a payment to an affiliated party inferentially for his own benefit." Dkt.

28 at 1; *see, e.g.*, *United States v. Brown*, 540 F.2d 364, 369 (8th Cir. 1976) (arrangement for

defendant building commissioner to approve demolition contracts in exchange for rent payments

for his "female acquaintance," which the defendant had told the acquaintance "would be taken

care of," *i.e.* for which the public official was responsible); *United States v. DeMizio*, No. 08-

CR-336, 2012 WL 1020045, at *1-2, 11 (E.D.N.Y. Mar. 26, 2012) (defendant negotiated "finder's fees" to be paid to his father and brother in connection with securities transactions in which those relatives had little involvement, where defendant's motive was to "relieve[] himself of the obligation to assist the [family members] using his own wealth" (citation omitted)); *United States v. Sorich*, 523 F.3d 702, 705-06 &709 (7th Cir. 2008) (mayor's "patronage chief" provided names of campaign workers and volunteers "to the heads of various city departments . . . for jobs" to be awarded to them regardless of merit; while the jobs went to political allies, the public official still "received *something*," namely the political benefit of reinforcing support). Each and every case cited by the government on this point is similarly and readily distinguishable. *See* Dkt. 28 at 5-9.[3]  But even if there was an outlier or two, the precedents relied on by the prosecution clearly do not constitute "core" bribery as defined by a review of the pre-*McNally* caselaw that *Skilling* held, alone, to be the within the scope of § 1346 as redefined by *Skilling*.  *See Percoco*, 2023 WL 3356527, at *9 (Gorsuch, J., concurring).[4]

As the First Circuit observed in *Abdelaziz*, "*Skilling* embodies a narrower understanding of the meaning of 'bribery' for purposes of honest services fraud that cuts against concluding

---

[3] The First Circuit precedent relied on by the government was not even a bribery case and therefore clearly does not survive *Skilling*'s narrowing construction.  *See United States v. Silvano*, 812 F.2d 754, 759 (1st Cir. 1987) ("[A]n employee's breach of a fiduciary duty falls within the strictures of the statute when it encompasses the breach of a duty to disclose material information to the employer.").

[4] In *Skilling*, "a majority of the Court acknowledged that a 'vagueness challenge [to § 1346] ha[d] force.'  But instead of 'throw[ing] out the statute as irremediably vague,' the majority elected to fill in some of the blanks.  To that end, the majority 'look[ed] to the doctrine' of honest-services fraud as it had developed in the lower courts 'in pre-*McNally* cases.' Recognizing the many internal tensions in that line of cases, the majority attempted to 'pare that body of precedent down to its core.'"  *Id.* (quoting *Skilling*, 561 U.S. at 403-405).

that the conduct involved here, which does not fall '[i]n the main . . . [of] the pre-*McNally* cases,' is a 'bribe' in the sense meant by *Skilling*." 2023 WL 3335870, at *17 (quoting *Skilling*, 561 U.S. at 404). "Construing § 1346 to cover conduct not covered by the ***core*** pre-*McNally* understanding of 'bribes' would not provide sufficient notice for 'ordinary people [to] understand what conduct is prohibited . . . raising the same concern which motivated the Supreme Court in *Skilling* to construe honest services fraud as it did." *Id.* at *19 (quoting *Skilling*, 561 U.S. at 402) (emphasis added). Given the ambiguity of the statute itself, Mr. O'Donovan would have been without warning that paying a close relative to lobby his family member would trigger either a federal undercover investigation or, more, a federal prosecution.

Notably, moreover, not one of the many cases cited by the *Skilling* Court as representative of "core" bribery involved government-manufactured conduct remotely comparable to that at issue here. And undersigned counsel is aware of no subsequent precedent holding that such conduct may be prosecuted under the honest services fraud statute as narrowed by *Skilling*. Under *Abdelaziz*, the lack of pre-*McNally* precedent for this type of prosecution undermines its validity. *See* 2023 WL 3335870, at *17.

In an effort to blunt the force of this reasoning, the government repeatedly relied upon the mere fact that Individual 1 was a "close family relative" of the Chief. Dkt. 23 at 2. But another intervening authority makes clear that such reliance is misplaced. In *Percoco*, the Supreme Court invalidated a jury instruction stating that a non-public official could owe "a duty of honest services to the public" if "people working in the government actually relied on him because of a special relationship he had with the government." 2023 WL 3356527, at *7. In so ruling, the Court emphasized the vagueness of the instruction asking, "Is it enough if an officeholder leans

very heavily on recommendations provided by a highly respected predecessor, family member, or old friend?" *Id.*  The off-shoot, for present purposes, is clear: there is no legal distinction for § 1346 purposes between hiring as a lobbyist or advocate a family member, or a close friend, or a prior office holder, or a prior chief of staff, or a person who helped the public official get elected,[5] or a person who gave campaign contributions to the public official[6] or hosted dinners or ran his campaigns.  The First Amendment protects the lobbying activities of all such individuals.  Individual 1's mere status as a family member of a public official does not meaningfully differentiate him from any other lobbyist or advisor.  *Cf. Citizens United v. FEC*, 558 U.S. 310, 359 (2010) ("Favoritism and influence are not . . . avoidable in representative politics. . . .  It is well understood that a substantial and legitimate reason, if not the only reason, to cast a vote for, or to make a contribution to, one candidate over another is that the candidate will respond by producing those political outcomes the supporter favors." (citation omitted)).  As the First Circuit

---

[5] *See Percoco v. United States*, No. 21-1158 Oral Argument Tr. (Nov. 28, 2022) at 48-49 (Justice Alito asking government attorney, "What do you say about somebody who is a super-super-effective lobbyist?  So let's say this person is a childhood friend of . . . the elected public official.  They played together on the high school football team.  This person was the elected official's best man or maid of honor at the wedding.  Spearheaded the person's political career.  Campaign manager for every campaign.  Helped this elected public official out of numerous political scrapes that everybody thought meant the end of the person's political career.  Now is a lobbyist, lobbies lots of different public officials, has lots of clients.  Has a 100 percent success rate with respect to this public official.  There's a concern about . . . interpreting this statute to sweep in lobbying, but would that person be covered in your view?" to which government attorney responded, "No.  And our position in this case has consistently been that mere influence is not enough to trigger 1346 . . . .").

[6] *See McCutcheon v. FEC*, 572 U.S. 185, 192 (2014) ("[G]overnment regulation may not target the general gratitude a candidate may feel toward those who support him or his allies, or the political access such support may afford.  Ingratiation and access . . . are not corruption.  They embody a central feature of democracy—that constituents support candidates who share their beliefs and interests, and candidates who are elected can be expected to be responsive to those concerns." (citation omitted)).

7

in *Abdelaziz* said in finding the conduct in the Varsity Blues admissions trial outside the core of pre-*McNally* honest services case law, "the applicability of § 1346 to the charged conduct has little historical antecedent and would introduce ambiguity . . . the Supreme Court 'ha[s] instructed that ambiguity concerning the ambit of criminal statutes[, including the mail and wire fraud statutes,] should be resolved in favor of lenity.'"  2023 WL 3335870, at *19 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)).  There is little or no "historical antecedent" to support the current prosecution and the matter should be dismissed.

*Abdelaziz* also rejected a government argument, indistinguishable from one raised in opposing Mr. O'Donovan's Motion to Dismiss, *see* Dkt. 23 at 9, that § 1346 should be construed as coterminous in scope with other federal bribery statutes.  *Skilling*'s citation to such other statutes "is best read as constraining honest services prosecutions by referring prosecutors to statutes that collectively offer general guidance as to whether particular conduct may be actionable, rather than as expanding the concept of 'bribery' to incorporate even the outermost limits of the cited statute's scopes."  *Abdelaziz*, 2023 WL 3335870, at *18 (rejecting the government argument that the broader parameters of 18 U.S.C. § 666 should be read into 18 U.S.C. § 1346 and should broaden the scope of "bribery" in the latter statute stating "[w]e do not think that while narrowly construing § 1346 to cover 'the bribe-and-kickback core of pre-*McNally* case law' . . . the Court meant simultaneously to extend § 666's broad language to apply outside the particular context for which Congress designed it" (quoting *Skilling*, 561 U.S. at 409)).

For the foregoing reasons, as well as those set forth in his initial Motion, Mr. O'Donovan respectfully requests that the Court dismiss Counts 1 and 2.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with the Government, and the Government opposes the

relief requested in this Motion.

Respectfully Submitted,
SEAN O'DONOVAN
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: May 22, 2023

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, May 22, 2023, a copy of the
foregoing document has been served via Electronic Court Filing system on all registered
participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.