UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 22-CR-10141 |
| SEAN O'DONOVAN,<br>　　　　Defendant | ) ) ) ) ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO RENEWED
MOTION TO DISMISS COUNTS 1 AND 2**

The government does not identify a single pertinent pre-*McNally* precedent where (a) the alleged corrupt exchange was a scripted fiction manufactured by the government rather than a bribe involving a public official who was in fact breaching his fiduciary duties to his employer ***or*** (b) no benefit of any kind was offered or provided by the defendant to any public official, direct or indirect, who the defendant allegedly sought to corrupt. It certainly cites no precedent that, like the present case, involves both of the foregoing facts. Under the First Circuit's recent opinion in *United States v. Abdelaziz*, 68 F.4th 1 (1st Cir. 2023), this should result in dismissal.

**A.   The Government Cites No Pre-*McNally* Precedent – or Any Precedent – Upholding an Honest Services Bribery Conviction Involving Conduct that in Fact Did Not Involve an Offer of Payment to or Benefit to an Official**

As the government acknowledges, the First Circuit in *Abdelaziz* rejected, as a matter of law, a theory of prosecution under 18 U.S.C. § 1346 "in large part because there was no 'pre-*McNally* . . . honest services case involving'" facts analogous to the case at hand, namely "a purported bribe paid to an agent's purportedly betrayed principal." Dkt. 56 at 2 (quoting

1

*Abdelaziz*, 68 F.4th at 30). *The same outcome is required here as a result of the government's continued failure to identify a single pre-McNally precedent involving government-manufactured conduct.* The government instead addresses this issue only in a brief footnote, faulting Mr. O'Donovan for taking the "novel" position that "federal criminal statutes . . . operate differently during undercover operations or when a cooperating witness is involved." Dkt. 56 at 5 n.5. But this comparison of "fact pattern[s]" is precisely the inquiry that *Skilling* and *Abdelaziz* require to determine whether the charged conduct alleged as criminal under a facially ambiguous statute, 18 U.S.C. § 1346, narrowed by judicial decision rather than legislative amendment, fits within the core of the statute. *See Abdelaziz*, 68 F.4th at 30.

The government's description underrepresents the agents' responsibility for the alleged conduct giving rise to this case. The government argues that Mr. O'Donovan "first approached [the Chief's relative] to propose the scheme," Dkt. 56 at 5 n.5, but the cited paragraph of the Indictment alleges only that Mr. O'Donovan "proposed that [the Chief's relative] **speak with the Chief** about the Client," clearly constitutionally protected conduct if it occurred. Dkt. 1 ¶ 24 (emphasis added). The government has yet to present any developed argument that paying a third-party to speak with a public official regarding a pending matter violates any federal bribery statute because it does not. *See, e.g.*, Dkt. 19 at 15-16. Mr. O'Donovan's subsequent "re-approach[]" to the Chief's relative, Dkt. 56 at 5 n.5, was not an offer of any bribe, but instead a request for the relative to "[t]ell [the Chief] to vote [the Client] #1 as they are **the best candidate for Medford legitimately**." Dkt. 1 ¶ 32 (emphasis added). It was only after more than seven months and four in-person meetings that the discussion now relied upon by the government occurred, initiated by the cooperator using a script from the FBI. *See* Dkt. 56 at 5.

In the present case, there was no public official who offered to change his vote – this was a fiction scripted by the FBI; there was no public official asking his relative to elicit evidence he would be paid – again, a fiction scripted by the FBI; there was not even a request by the defendant that the public official do anything more than read the application, vote for the Client but only if he believed it merited it,[1] and advocate for the Client if and only if he believed it merited it.  *No case approaching these facts has been found by the defense and none cited by the government to place this manufactured case within the heartland of § 1346 and within the core of the pre-McNally kickbacks or bribery as **required** by Abdelaziz.*[2]

**B.    The Government Cites Only Three Cases Involving Things of Value Provided to Third-Parties, None of which Represents Core Pre-*McNally* Bribery and All of which Are Readily Distinguishable**

In addition to the lack of any precedent involving government-manufactured facts, in opposing Mr. O'Donovan's Renewed Motion, and after many rounds of briefing on the issue, the government identifies only three cases in support of its argument that core pre-*McNally* bribery included cases where items of value were provided only to a third-party, not to the official alleged to owe a duty of honest services.  One of those cases, *United States v. DeMizio*, 741 F.3d 373 (2d Cir. 2014), was decided more than 25 years after *McNally*, and indeed after *Skilling* as

---

[1] The Indictment cherry-picks certain aspects of the recorded meetings, but omits Mr. O'Donovan's repeated recorded statement that, if the Chief did not like the Client's application, Mr. O'Donovan did ***not*** want him to vote in favor of it.  On September 14, 2021, for example, Mr. O'Donovan told the Chief's relative, "you . . . gotta say to [the Chief], say listen . . . **if O'Donovan's group doesn't get it because . . . they suck then he wouldn't want to put you in that spot. . . .  But, i-*if he was gonna vote for them anyway* and you're giving them a high vote that's what I'm looking for**." Dkt. 34, Exhibit 5 (emphasis added).  **The same tying of a request that the Chief review the application but that if he doesn't think it merits support he should reject it permeates the prior recorded meeting on April 26, 2021**.  *See* Dkt. 34, Exhibit 4.

[2] In some respects, the present case represents a more extreme departure from the core of the pre-*McNally* caselaw than even *Abdelaziz* itself.  There, unlike in this case, the university officials did betray duties to their employer in return for payments to their athletic programs.  *See Abdelaziz*, 68 F.4th at 14, 16-19.  Here, by contrast, the alleged bribery was a mere figment of the government's imagination.

3

well.  Another, *United States v. Brown*, 540 F.2d 364 (8th Cir. 1976), was cited by *Skilling* in a manner strongly suggesting that the Court did ***not*** view it as within the core honest services doctrine.  *See* Dkt. 28 at 6-7.  *Moreover, both DeMizio and Brown are readily distinguishable on their facts, because in each the items of value given to third-parties were for the benefit of the defendants, as there was evidence that the defendants would otherwise be responsible for providing the support.*  *See Brown*, 540 F.2d at 369 (arrangement for defendant building commissioner to approve demolition contracts in exchange for rent payments for his "female acquaintance," which the defendant had told the acquaintance "would be taken care of," *i.e.* for which the public official was responsible); *United States v. DeMizio*, No. 08-CR-336, 2012 WL 1020045, at *1-2, 11 (E.D.N.Y. Mar. 26, 2012) (defendant negotiated "finder's fees" to be paid to his father and brother in connection with securities transactions, where defendant's motive was to "relieve[] himself of the obligation to assist the [family members] using his own wealth" and where defendant had "complained" about "his father asking him for money" (citation omitted)).  The government makes no similar allegation here.[3]  The government's final proffered authority, *United States v. Silvano*, 812 F.2d 754 (1st Cir. 1987), has been expressly described by the First Circuit as a "conflict of interest," as opposed to bribery, case.  *United States v. Sawyer*, 85 F.3d 713, 730 (1st Cir. 1996).  While the government may, with more than three decades' worth of hindsight, now wish to present *Silvano* as a core bribery or kickback case, neither of those words appears anywhere in the opinion and the First Circuit neither found nor relied on the fact that the public official awarded the contract in exchange for payment to his friend.

    *The Abdelaziz Court's citation to authorities defining bribery to require a "private"*

---

[3] There is no evidence that the Chief was intending or expected to provide financial support to the relative recording the meetings with Mr. O'Donovan or had any financial responsibility to do so, unlike in *Brown* or *DeMizio*.

*favor or gain supports the defense argument that a case involving nothing of value flowing to a public official is not core honest services fraud.  See* 68 F.4th at 31.

**C.      The Mere Fact of Payment to a Family Member Does Not Change the Analysis**

The Supreme Court's recent opinion in *Percoco v. United States*, 143 S. Ct. 1130, 1138 (2023), makes clear that the mere fact that Mr. O'Donovan offered payment to the Chief's relative, as opposed to some other potentially influential person, is of no legal import.  Accordingly, that fact cannot salvage the government's argument that this case involves core pre-*McNally* bribery.

**D.      Conclusion**

To apply the honest services fraud statute in the present circumstances would be to reinvigorate the very same vagueness concerns underlying *Skilling*'s narrowing construction.  As the Supreme Court reiterated just last week:

> This Court has traditionally exercised restraint in assessing the reach of a federal criminal statute.  This restraint arises both out of deference to the prerogatives of Congress and out of concern that a fair warning should be given to the world in language that the common world will understan[d] of what the law intends to do if a certain line is passed.  After all, [c]rimes are supposed to be defined by the legislature, not by clever prosecutors riffing on equivocal language.

*Dubin v. United States*, No. 22-10, 2023 WL 3872518, at *11 (U.S. June 8, 2023) (citations omitted).

For all of the foregoing reasons, as well as those set forth in the initial and renewed Motions, Mr. O'Donovan respectfully requests that this Honorable Court dismiss Counts 1 and 2.

Respectfully Submitted,<br>
SEAN O'DONOVAN<br>
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: June 16, 2023

## CERTIFICATE OF SERVICE

    I, Martin G. Weinberg, hereby certify that on this date, June 16, 2023, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
