```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            v.                      )    CRIMINAL ACTION
                                    )    NO. 22-10141-WGY
SEAN O'DONOVAN,                     )
                                    )
            Defendant.              )
_____)
```

YOUNG, D.J.                                         July 19, 2023

## MEMORANDUM AND ORDER

After this Court had, following hearings on November 7, 2022, and December 19, 2022, considered and denied Sean O'Donovan's ("O'Donovan") motion to dismiss, ECF. No. 19, O'Donovan renewed his motion.  Renewed Mot. Dismiss Counts 1 & 2 ("Renewed Mot. Dismiss"), ECF No. 52.  O'Donovan does so under the supposition that two binding cases, not in existence at the time of his first motion, mandate a dismissal of Counts 1 and 2. O'Donovan suggests that such dismissal is required because these new cases force the conclusion that the indictment here fails to allege the core bribery required for a charge of honest services fraud.  The Court rejects O'Donovan's argument.

The first of the two cases upon which O'Donovan bases his renewed motion on is United States v. Abdelaziz, 68 F.4th 1 (1st Cir. 2023).  Renewed Mot. Dismiss 1.  Abdelaziz, in the part

relevant to this motion, saw the First Circuit reiterate that 18 U.S.C. section 1346 "criminalizes only the bribe-and-kickback core of the pre-McNally case law."  68 F.4th at 28.  Insofar as O'Donovan argues that the fact pattern put forth by the indictment -- O'Donovan bribing a public official by manner of payment to the official's relative -- removes this case from the core of honest services fraud, this Court offers no more than reference to its existing ruling on the original motion to dismiss.

    The novel argument raised through the current motion, however, is that somehow the existence of an undercover operation and a cooperating witness removes this case from the core of honest services fraud.  Renewed Mot. Dismiss 3-4.  At the hearing for the instant motion, O'Donovan relied on a specific definitional excerpt as to the honest services doctrine, originally from Skilling v. United States, 561 U.S. 358, 400 (2010), but quoted too in Abdelaziz: "[w]hile the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, **who had not been deceived**, provided the enrichment."  Abdelaziz, 68 F.4th at 27 (emphasis added).  Interpreting and applying this passage to his circumstances, O'Donovan argues that he was deceived because of the government's undercover operation, and therefore, cannot be indicted under an honest services fraud theory.

2

O'Donovan's argument is of no moment. When Skilling's reference to deception is read in context, the argument that a government undercover operation precludes honest services fraud culpability unravels. In Skilling, the Supreme Court sought to review the genesis and subsequent development of the honest services fraud doctrine. 561 U.S. at 399. In doing so, the Supreme Court first set out what a conventional understanding of fraud is in terms of who profits and who loses: "[a] victim's loss of money or property supplie[s] the defendant's gain, with one the mirror image of the other." Id. at 400. The Supreme Court then explained that honest services fraud lacked such symmetry.

> While the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who had not been deceived, provided the enrichment. For example, if a city mayor (the offender) accepted a bribe from a third party in exchange for awarding that party a city contract, yet the contract terms were the same as any that could have been negotiated at arm's length, the city (the betrayed party) would suffer no tangible loss. Cf. McNally, 483 U.S., at 360, 107 S.Ct. 2875. Even if the scheme occasioned a money or property gain for the betrayed party, courts reasoned, actionable harm lay in the denial of that party's right to the offender's "honest services." See, e.g., United States v. Dixon, 536 F.2d 1388, 1400 (C.A.2 1976).

Ibid.

Read in context it is clear that the reference to deception in the manner set out by the Supreme Court in Skilling deals with the necessary juxtaposition between regular fraud and

3

honest services fraud.  The Supreme Court distinguished regular fraud, where it is the victim who is deceived, from honest services fraud, where a third party enriches the offender, and an entirely different party suffers a betrayal or deception through a denial of their right to the offender's honest services.  Id.  One simply cannot read into this -- in the manner that O'Donovan wishes that this Court would –- as precluding liability for honest services fraud where the third party is enriching whom he believes to be an offender but does so under a mistaken premise orchestrated by the government. There is no precedent that suggests this Court must do so here. Moreover, while O'Donovan may argue that it is in fact the government's burden to identify a pre-McNally precedent that supports honest services fraud where a government operation was involved, this Court does not go so far as to collapse such an operation with the facts pertaining to the alleged honest services fraud here.  There are the alleged underlying facts giving rise to honest services fraud and then there exists too a government operation.  These do not coalesce into a single fact pattern to which the government must find an analog.

The second case upon which O'Donovan bases his renewed motion is Percoco v. United States, 143 S. Ct. 1130 (2023). Renewed Mot. Dismiss 1.  Percoco concerned the issuance of a jury instruction regarding whether a private citizen may owe a

4

duty of honest services to the public.  143 S. Ct. at 1138-39. The Supreme Court ruled that a jury instruction suggesting that a private citizen could owe a duty of honest services to the public if "people working in the government actually relied on him because of a special relationship he had with the government" was too vague and consequently invalid.  Id. at 1138.  The Supreme Court reasoned that such a jury instruction, were it to be accepted, would have rendered well connected lobbyists susceptible to honest services fraud charges.  Id. That is of no relevance at this stage of the proceedings. O'Donovan may maintain that his actions constitute lawful lobbying but the indictment alleges that O'Donovan believed himself to be in a quid pro quo agreement with the Chief of the Medford Police.  At the motion to dismiss stage, where all intendments must be drawn in favor of the indictment, O'Donovan's arguments pertaining to lawful lobbying must be rejected.  See Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952) (explaining that when adjudicating a motion to dismiss a criminal case, courts accept the factual allegations pled in the indictment as true).

    The cases addressed here do not sway the Court's former opinion.  The indictment stands.  Motion, ECF No. 52, denied. **SO ORDERED.**

```
                              /s/ William G. Young
                             WILLIAM G. YOUNG
                                   JUDGE
                                   of the
                             UNITED STATES[1]
```

---

[1] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.