UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 22-cr-10141-WGY |
| SEAN O'DONOVAN, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION *IN LIMINE*
TO LIMIT EVIDENCE AND ARGUMENT REGARDING
MERITS OF THEORY WELLNESS, INC.'S
APPLICATION FOR HOST COMMUNITY AGREEMENT**

The United States, by and through the undersigned counsel, hereby moves to limit

evidence and argument regarding the merits of Theory Wellness, Inc.'s (Theory's) application

for a Host Community Agreement (HCA) with Medford, Massachusetts. As discussed below, it

is neither material nor a defense to the crimes charged that the Medford Chief of Police (the

Chief) and the Medford Mayor (the Mayor) ranked Theory's HCA application favorably even

though they were isolated from the defendant's bribery scheme by investigators. That is, it is no

defense to bribery that the defendant paid a bribe for something Theory would have received

without the bribe.

The government expects to introduce evidence at trial that will establish that the

defendant offered to pay, and made a down payment on, a bribe to the Chief's brother, Michael

Buckley (Buckley) in exchange for the Chief's agreement to give Theory[1] a favorable score for

its HCA application and to pressure the Mayor to select the Client's HCA application quickly.

The government also expects that the evidence at trial will demonstrate that the Chief gave the

Client's HCA application the highest score, and that the Mayor ultimately entered into an HCA

---

[1] Theory was not aware of the defendant's bribery scheme.

1

with the Client. Finally, the government expects to introduce evidence at trial that will establish that the Chief did not know before he scored the applications that Theory was the client about which the defendant approached Buckley, and that the Mayor was insulated by investigators from the defendant's bribery scheme until after she signed an HCA with Theory.

It is neither material nor a defense to the honest services fraud and bribery crimes charged in the indictment that the Chief and the Mayor selected the Client's application on its merits, without knowledge of the defendant's plan to bribe the Chief's relative in return for the Chief's agreement to vote for the Client's application and influence the Mayor to grant the HCA to the Client. *See, e.g., City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 379 (1991) ("A [public official] is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid.") (citing *United States v. Jannotti*, 673 F.2d 578, 601 (3d Cir. 1982)); *United States v. McDonough*, 727 F.3d 143, 161 (1st Cir. 2013) ("The issue in this case is not whether the defendants truly thought the software was a benefit to the Commonwealth; instead it is whether they intended to exchange payments to [a politician] for assistance to [a contractor].."); *United States v. Quinn*, 359 F.3d 666, 675 (4th Cir. 2004) ("It is not necessary for conviction under § 201(b) that the official act offered in exchange for the bribe be harmful to the government or inconsistent with the official's legal obligations. . . . [I]t does not matter whether the government official would have to change his or her conduct to satisfy the payor's expectations."); *United States v. Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) ("is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act"). The reason for this is clear:

> It is a major concern of organized society that the community have the
> benefit of objective evaluation and unbiased judgment on the part of those
> who participate in the making of official decisions. Therefore, society
> deals sternly with bribery which would substitute the will of an interested

> person for the judgment of a public official as the controlling factor in
> official decision. The statute plainly proscribes such corrupt interference
> with the normal and proper functioning of government.

*United States v. Labovitz*, 251 F.2d 393, 394 (3d Cir. 1958) (rejecting argument that bribery

under 18 U.S.C. § 201 must be directed at accomplishment of unlawful action).

Likewise, it is not a defense to honest services fraud and bribery that an HCA between

Medford and the Client would benefit the City. *See Skilling v. United States*, 561 U.S. 358, 400

(2010) ("Even if the scheme occasioned a money or property gain for the betrayed party, courts

reasoned, actionable harm lay in the denial of that party's right to the offender's "honest

services.'"); *United States v. Lopez-Lukis*, 102 F.3d 1164, 1169 n.13 (11th Cir. 1997) ("Sections

1341 and 1346 do not address the wisdom or results of a legislative decision; rather, they

concern the *manner* in which officials make their decisions.") (emphasis added); *United States v.*

*Morgan*, 635 F. App'x 423, 465 (10th Cir. 2015) ("Bribery is not illegal because it leads to

inferior legislation; it is illegal because it betrays the public trust") (internal quotations and

citations omitted). The illegal conduct under the honest services fraud and bribery statutes is the

agreement to pay a bribe in return for some official action, and the government is not required to

demonstrate that the official action would be harmful to the public.

The government expects that limited evidence regarding the merits of the Client's HCA

application will be admissible at trial because it is intrinsic to the bribery scheme. For example,

the defendant's recorded statements to Individual 1 touting the purported merits of the Client's

application are inextricable from the rest of his admissions in the recordings. Further, the

government expects the Chief and the Mayor to testify regarding the HCA application process

and their isolation from the defendant's bribery scheme, which testimony will include the facts

that the Chief ranked the Client's application highest and the Mayor ultimately signed an HCA

for the City with the Client. However, the introduction of additional evidence or argument regarding the merits of the Client's application (and any potential benefits to Medford) could muddy the waters and mislead or confuse the jury, which is faced with deciding whether the defendant intended to deprive Medford of the honest services of its public officials, not whether the defendant intended to harm or actually harmed the City financially.

Accordingly, for the reasons set forth herein, the government requests that the Court limit the evidence regarding the merit of the Client's HCA application to that evidence intrinsic to the defendant's bribery scheme. The Court should further prohibit the defendant from introducing evidence or arguing that (1) he could not have committed bribery or honest services fraud because even if successful, his scheme would not have changed the outcome of the HCA process, or (2) because the defendant's actions were not financially harmful to Medford, he cannot be convicted of bribery or honest services fraud.

Dated: October 6, 2023                     Respectfully submitted,


JOSHUA S. LEVY                             COREY R. AMUNDSON
Acting United States Attorney              Chief, Public Integrity Section
                                           U.S. Department of Justice


By: *Kristina E. Barclay*                  By: *Jonathan E. Jacobson*
Kristina E. Barclay                        Jonathan E. Jacobson
Assistant United States Attorney           Trial Attorney, Public Integrity Section
                                           U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2023 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to all attorneys of record.

*/s/ Kristina E. Barclay*
Kristina E. Barclay
Assistant United States Attorney