UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 22-10141-WGY |
| | ) | |
| SEAN O'DONOVAN, | ) | |
| | ) | |
| Defendant | ) | |

**OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* TO EXCLUDE LAY
TESTIMONY REGARDING THE APPROPRIATENESS OF HIS CONDUCT (ECF 96)
AND CHIEF'S REASONS FOR CONTACTING THE FBI (ECF 97)**

The United States respectfully submits this opposition to (1) Defendant's Motion *in Limine* to Exclude Lay Testimony Regarding the Appropriateness of His Conduct (ECF 96) and (2) Defendant's Motion *in Limine* to Exclude Evidence Regarding Chief's Reasons for Contacting the FBI (ECF 97). Because the testimony at issue is admissible and relevant—and because it is not lay opinion testimony within the meaning of Federal Rule of Evidence 701—the Court should deny both motions.

## APPLICABLE LAW

The testimony Defendant seeks to exclude is not opinion testimony at all, but rather testimony regarding the state of mind of the witnesses. "A witness's testimony about his own state of mind is not opinion testimony." *United States v. Morton*, 391 F.3d 274, 277 (D.C. Cir. 2004) (citing *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir.1990) ("What [the witness] called his 'opinion' was actually a report of the contents of his mind, of which people are normally assumed . . . to have direct rather than inferential knowledge")); *see also United States v. Mandujano*, 499 F.2d 370, 379-80 (5th Cir. 1974) (agent's testimony that he aborted deal because he felt it was unsafe based on information he received admissible to show agent's state of mind); *United States v. Hill*, 931 F.2d 56 (6th Cir. 1991) (unpublished) (witnesses permitted to testify as

1

to their own state of mind); *United States v. Hild*, 644 F. Supp. 3d 7, 50-51 (S.D.N.Y. 2022) (witnesses permitted to testify based on their direct participation in a pricing scheme that they knew the scheme was fraudulent and wrong) (citing *United States v. Yannotti*, 531 F.3d 112 (2d Cir. 2008)). Where a witness is not asked to draw an inference for the jury's benefit (*i.e.*, to "formulate an opinion in litigation"), but rather to "explain the basis on which the witness has drawn an inference in the past," the admission of that testimony is not problematic. *Giovannetti*, 919 F.2d at 1226. Further, where a defendant's knowledge and intent are at issue and must be inferred by the jury, the testimony of a witness about what he knew based on the same facts available to the defendant is relevant and therefore admissible. *Id.* (citing *United States v. Guzzino*, 810 F.2d 687, 699 (7th Cir. 1987)).

Even if the testimony Defendant seeks to exclude were opinion testimony, it is admissible under Federal Rule of Evidence 701. Rule 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

The testimony at issue clearly satisfies the Rule 701 standard.

## A. **Brandon Pollock's Testimony**

The government anticipates that Brandon Pollock (Pollock), the CEO of Defendant's client, Theory Wellness, Inc. (Theory), will testify regarding communications he had with Defendant in the Fall of 2021. Specifically, Defendant asked Pollock in a phone call in late September 2021 for permission to hire the brother of the Medford Chief of Police (the Chief) as a

"security consultant" to Theory. When Pollock did not respond, Defendant followed up with a text message to Pollock on October 7, 2021, asking, "Hi Brandon – do I have permission to higher [sic] a consultant for 25k? Will need to pay it upon success. I would recommend it." Pollock rejected Defendant's request because he considered the request to hire the Chief's brother, especially given the timing of the request—Theory's application was then pending before the Medford Cannabis Advisory Committee—improper and inappropriate.

Pollock's testimony about his own state of mind is not opinion testimony. First, it will allow Pollock to explain why he contacted his state-level lobbyist Jay Youmans to seek advice on how to address Defendant's offer (Youmans told Pollock he should reject Defendant's offer). Second, such testimony about Pollock's state of mind—his gut instinct not to accept Defendant's proposal—will also demonstrate one of the central reasons why he denied Defendant's request to hire the Chief's brother. In short, Pollock will not be asked to provide an opinion about Defendant's conduct or Defendant's state of mind to the jury. Instead, he would merely be explaining to the jury his reaction to Defendant's request. As discussed above, such testimony is not lay opinion testimony subject to a Rule 701 analysis.

The government also anticipates that Pollock will testify that Defendant claimed to have enlisted the assistance of his friend, William Carr (Carr), to promote Theory's application to the Medford Mayor. The morning after Defendant had dinner with Carr,[1] he texted Pollock, "Went great [] last night. I promised him a good job for his daughter at Theory & told him we'd give him

---

[1] On July 24, 2021, Defendant left Pollock a voicemail stating, "the fellow that I've been working on, Bill Carr, who you've heard his name before is ah, ready to be activated. Um, he, well I'll tell you when I talk to you, he was a little bit reluctant before just, for different reasons. But he is, ah, in a good spot right now, he wants me to get him a short email on talking points for when he sits down with the Mayor at my direction…" Pollock will testify that he believes he saw that Defendant had called and that Pollock returned the call, but he did not listen to this voicemail in July 2021.

a bonus after we get our hca [host community agreement]. I hope that was ok?" Pollock responded, "Very funny, but glad to hear you had a good meeting." Defendant replied, "He's exceptionally close with her [*i.e.*, the Mayor]! I mean CLOSE!" The government anticipates that Pollock will testify that he did not believe Defendant had actually agreed to hire Carr's daughter and that it was a "silly request" because Theory had a human resources department that managed hiring for the company. Pollock also did not believe Defendant had actually offered Carr a bonus in the event that Theory obtained an HCA.

Pollock's testimony about his own state of mind and reaction to Defendant's texts about Carr also is not opinion testimony. Pollock will not testify about Defendant's state of mind when he sent the texts, but rather will explain his own reaction (or lack thereof) to the texts. Such state of mind evidence is critical to explain why Pollock did not immediately tell Defendant to rescind the offer to Carr or report the offer to law enforcement. Like his testimony about the "security consultant" call and text, this testimony is not lay opinion testimony subject to Rule 701.

Even analyzed under Rule 701, Pollock's testimony would be admissible. First, the testimony is rationally based on Pollock's perception: Pollock will be testifying based on his personal involvement in conversations with Defendant, his knowledge of the circumstances surrounding the communications (including the fact that Theory's application was pending), and about his own state of mind. *See* Fed. R. Evid. 701(a). Defendant's argument that the testimony is not based on perception because Pollock does not have firsthand knowledge of Defendant's dealings with Michael Buckley (the Chief's brother) and Carr misses the mark. *See* ECF 96, at 5. Pollock will not be asked to testify about Defendant's dealings with Buckley and Carr, but rather about his own interactions with Defendant and his own state of mind based on those interactions (matters about which he obviously has firsthand knowledge).

Second, the Rule 701(b) test is not solely whether the testimony is helpful to determining a fact in issue, as Defendant suggests in his Motion. ECF 96, at 3. The test is whether the testimony is "helpful to clearly understanding the witness's testimony *or* to determining a fact in issue." Fed. R. Evid. 701(b) (emphasis added). Pollock's *reasons* for refusing to hire the Chief's brother are helpful to understanding his testimony that he rejected Defendant's request to hire Buckley. Likewise, his reaction to the text about Carr is critical to understanding why Pollock did not demand that Defendant rescind the offer to Carr or report the offer to authorities. Otherwise, the jury would be left wondering whether Pollock seriously considered hiring Buckley and Carr's daughter (and paying Carr a bonus for the HCA) and why Theory did not ultimately hire them. This would inappropriately (and wrongly) leave the jury with a misimpression of Pollock's actions, and likely lead to jury confusion. Moreover, Defendant's argument that Pollock's testimony cannot be helpful to the jury because it does not answer the question of whether Defendant's offer to pay Buckley and hire Carr's daughter was part of a corrupt *quid pro quo* agreement would turn First Circuit precedent on its head. *See, e.g., United States v. Vazquez-Rivera*, 665 F.3d 351, 357 (1st Cir. 2011) ("[L]ay opinions going to the ultimate issue will rarely meet [the helpfulness requirement of Rule 701(b)] since the jury's opinion is as good as the witness's.") (citations and quotations omitted). If Pollock's testimony *did* answer the bribery question, it would go to the ultimate issue in the case, and would not likely be admissible. But because Pollock's testimony does *not* go to the ultimate issue—that is, whether Defendant committed bribery—and because it is helpful to understanding his testimony and Theory's decision not to hire Buckley or Carr's daughter, it is admissible under Rule 701.

Multiple cases cited by Defendant in support of exclusion are easily distinguishable because the witnesses whose testimony was precluded had no personal knowledge of the facts as

to which they were called to testify. The testimony at issue in *Perret v. Nationwide Mut. Ins. Co.*, No. 10-CV-522, 2013 WL 12099400, at *3 (E.D. Tex. July 19, 2013), was excluded *not* because lay opinion that the relevant employee coaching plans "were inappropriate, subjective, and constituted evidence that [a supervisor] singled out [plaintiffs] for termination" was prohibited (as Defendant argues, *see* ECF 76 at 5), but rather because the witness himself had no personal knowledge of the coaching plans. In fact, the testimony of the person who actually wrote the coaching plans was permissible as lay opinion under Rule 701. *Id.* Similarly, the testimony at issue in *In re Perry H. Koplik & Sons, Inc.*, 382 B.R. 599, 602 (Bankr. S.D.N.Y. 2008), was that of an accountant who studied the debtor's affairs after the debtor filed for bankruptcy protection. The Court precluded the witness from testifying that what he reviewed "was *wrongful*, or as to what *should* have been done under the circumstances" because the witness conducted an investigation of matters that preceded his "arrival on the scene." *Id.* Where the testimony reflected the witness's *views* rather than his *perceptions*, it was precluded. *Id.* at 603.

In contrast, Pollock will testify based on his personal involvement in the communications with Defendant and his perception of those communications. Such testimony is admissible regardless of whether Rule 701 applies. *See United States v. Campo*, 840 F.3d 1249, 1266-67 (11th Cir. 2016) (holding, without deciding whether Rule 701 applies to witness's testimony about his own state of mind, that district court did not plainly err in admitting testimony under Rule 701).

### B.  Medford Chief of Police John Buckley's Testimony

The government anticipates that Medford Chief of Police John Buckley (again, the Chief) will testify that he was upset when his brother Michael Buckley told him that Defendant had offered $25,000 for Michael Buckley to talk to the Chief about Defendant's client (*i.e.*, Theory). The Chief immediately contacted the FBI because he was angry that anyone would believe the

Chief could be approached in this manner, that anyone believed the Medford Police Department would be party to something of this nature, and that someone would be willing to manipulate the cannabis HCA process. The Chief also will testify that **he** was concerned about both his own reputation and that of the city of Medford.

Without citing any precedent, Defendant argues that the Chief's testimony as to why he went to the FBI is irrelevant and prejudicial. ECF 97 at 2 (citing only Fed. R. Evid. 401, 403). However, because this case resulted from a law enforcement "sting" operation, it is critical for the jury to understand how and why the FBI became involved. It is also critical for the jury to hear the Chief's state of mind when Michael Buckley told him about Defendant's offer. Defendant will no doubt argue that his offer of $25,000 to Buckley to have a conversation with the Chief about Theory was not illegal. It is highly relevant that both Michael Buckley and the Chief both understood that Defendant wanted more than a mere conversation with the Chief, and that Defendant's approach triggered grave concerns both from Buckley and the Chief.

The Chief's testimony as to why he reached out to the FBI will be even more relevant if Defendant presents an entrapment or entrapment-like defense. That the Chief was offended and angered by Defendant's offer indicates that Defendant's conduct from the *outset* constituted criminal activity: this is relevant both to show that the government did not induce Defendant's bribery scheme and that he had a predisposition to engage in illegal behavior.

## <u>CONCLUSION</u>

Accordingly, the government respectfully submits that the Court should deny Defendant's motions *in limine* (ECF Nos. 96 & 97) and allow the testimony of Pollock and the Chief as to their own state of mind.

7

Dated: October 12, 2023                    Respectfully submitted,


JOSHUA S. LEVY                             COREY R. AMUNDSON
Acting United States Attorney               Chief, Public Integrity Section
                                           U.S. Department of Justice


By: *Kristina E. Barclay*                   By: *Jonathan E. Jacobson*
Kristina E. Barclay                        Jonathan E. Jacobson
Assistant United States Attorney            Trial Attorney, Public Integrity Section
                                           U.S. Department of Justice


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of October 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this case.

/s/ *Kristina E. Barclay*
Kristina E. Barclay
Assistant United States Attorney